UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANE DOE,
    *Plaintiff,*

v.

YALE UNIVERSITY,
    *Defendant.*                  Civil Action No. 26-cv-371

**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
UNDER THE PSEUDONYM "JANE DOE"**

**INTRODUCTION**

Plaintiff Jane Doe respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 10(a) and the balancing framework established by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185 (2d Cir. 2008), for leave to proceed in this action under the pseudonym "Jane Doe" in lieu of her legal name. As set forth below, this case presents the rare and exceptional circumstances that warrant departure from the general presumption of open litigation.

This civil rights action arises from Yale University's wrongful academic dismissal of an international graduate student who was sexually assaulted while enrolled in a joint degree program with Yale. Ms. Doe suffers from severe, clinically documented mental health disabilities—including post-traumatic stress disorder ("PTSD"), major depression, anxiety, and a chronic sleep disorder—stemming in significant part from that sexual assault. She brings claims under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and Title IX, among other causes of action.

The highly sensitive nature of the information at the core of this case—sexual victimization, psychiatric hospitalization, suicidal ideation, and the ongoing treatment of severe trauma—places this motion on qualitatively different footing than cases involving privacy interests alone. Courts have long recognized that victims of sexual assault occupy the highest tier of sensitivity in pseudonymity analysis, and the Second Circuit has specifically identified sexual victimization as among the paradigmatic grounds for proceeding anonymously. *See Sealed Plaintiff*, 537 F.3d at 190; *see also Doe v. Colautti*, 592 F.2d 704 (3d Cir. 1979).

The medical evidence supporting this motion is unequivocal. Ms. Doe's treating physician, Dr. Qi Quan—an attending emergency physician, deputy chief physician, and holder of both PhD and MD degrees at the Fourth Medical Center of Chinese PLA General Hospital—has opined to a reasonable degree of psychological certainty that forcing Ms. Doe to proceed publicly would "trigger a catastrophic psychological decompensation" and "would pose a severe risk to her personal safety and survival." (Medical Note of Dr. Qi Quan, dated February 24, 2026 ("Medical Note"), being filed simultaneously under seal with a motion to seal, also referred to as "Exhibit A" to this motion.) Dr. Quan further states that in Ms. Doe's current state of vulnerability, public identification with this litigation "would render her unable to pursue the current legal process." (*Id.*)

## **LEGAL STANDARD**

Although Federal Rule of Civil Procedure 10(a) requires that a complaint "name all the parties," courts in this Circuit have long recognized that this requirement "is not absolute." *Sealed Plaintiff*, 537 F.3d at 188. The Second Circuit has identified a non-exhaustive list of ten factors that courts must balance in determining whether a plaintiff may proceed under a pseudonym:

(1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature"; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking anonymity or to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 189–90 (internal citations omitted). The Second Circuit has instructed courts to review each application for pseudonymity on its own merits, recognizing that while general rules exist, there are exceptions requiring careful analysis of case-specific factors. *Id.* at 189. Critically, "this list is non-exhaustive and district courts should take into account other factors . . . ." *Id.* The inquiry demands individualized balancing rather than categorical application of the presumption of openness. *Id.* at 190–91.

## ARGUMENT

### I. THE *SEALED PLAINTIFF* FACTORS OVERWHELMINGLY FAVOR PSEUDONYMITY IN THIS CASE

**A.     The Litigation Involves Matters of the Highest Sensitivity and Personal Nature (Factor 1)**

This case involves the most sensitive categories of personal information recognized in pseudonymity jurisprudence. At its core, this litigation requires disclosure of: (a) Ms. Doe's sexual assault by a fellow student at HEC Paris in the Fall of 2022; (b) her resulting diagnoses of PTSD,

major depression, severe anxiety, and chronic insomnia; (c) her psychiatric hospitalization at Yale New Haven Psychiatric Hospital, including suicidal ideation; and (d) her ongoing psychiatric and therapeutic treatment.

Cases involving mental health have provided a basis for pseudonymity. *See, e.g., Doe v. New York University*, 442 F. Supp. 522 (S.D.N.Y. 1978) (permitting pseudonymity for student with mental health conditions in case against university); *Doe v. Colautti*, 592 F.2d 704 (3d Cir. 1979) (permitting pseudonymity in case involving mental health programs). The sensitivity here exceeds even that standard. Ms. Doe must disclose not only the fact of her mental health status, but also her sexual victimization and the full psychiatric sequelae of that assault—including PTSD, hospitalization, and suicidal ideation—because Yale's knowledge of her disabilities and its failure to accommodate them are the central facts upon which this case turns.

Such disclosures are information of a sensitive and highly personal nature. *Sealed Plaintiff*, 537 F.3d at 190. They encompass matters protected under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et seq.*, and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. This factor weighs heavily in favor of pseudonymity.

**B.      Identification Poses a Serious Risk of Retaliatory Physical and Mental Harm (Factor 2)**

The unrebutted medical evidence establishes that public identification would cause Ms. Doe severe, concrete harm rising to the level of a risk to her personal safety. Dr. Qi Quan, Ms. Doe's treating physician, has opined within a reasonable degree of psychological certainty that forcing Ms. Doe to proceed publicly "would trigger a catastrophic psychological decompensation" and "would pose a severe risk to her personal safety and survival." (Medical Note at 1.) This is not

speculative or generalized—it is a particularized medical opinion from a treating clinician grounded in ongoing clinical observation.

Dr. Quan explains that the intersection of chronic sleep deprivation and autonomic arousal has "compromised her emotional reserves," and that in her "current state of vulnerability, such a stressor would render her unable to pursue the current legal process." (*Id.*) Ms. Doe has been under active clinical care and has consistently attended psychotherapy for the past six months. (*Id.*)

Moreover, Ms. Doe's assailant was enrolled in the same joint degree program between Yale and HEC Paris. (Compl. ¶ 37.) Public identification of Ms. Doe would effectively reveal the circumstances of the sexual assault to the academic and professional community in which both she and her assailant move, exposing her to risks of retaliatory harm, social ostracism, and further trauma.

Courts have granted pseudonymity based on far less severe evidence of harm. In *Doe v. Hartford Life and Accident Insurance Company*, 237 F.R.D. 545 (D.N.J. 2006), the district court allowed pseudonymity for a plaintiff with bipolar disorder based on a treating psychiatrist's letter stating that public identification would "potentially worsen his medical condition." 237 F.R.D. at 547. The medical evidence here establishes not merely worsening of symptoms but the risk of "catastrophic psychological decompensation" and danger to Ms. Doe's safety.

C.     **Identification Presents Severe Additional Harms, Including Stigma, Economic Loss, and Immigration Consequences (Factor 3)**

Beyond the direct psychiatric harm, public identification would inflict further injuries on Ms. Doe through multiple channels. As an international citizen of the People's Republic of China whose F-1 visa was revoked following Yale's dismissal (Compl. ¶¶ 126–28), public association with allegations of sexual assault and psychiatric hospitalization carries particularly devastating

consequences. Empirical research confirms that mental health disclosure in academic and professional settings produces significant stigma and discriminatory treatment. *See, e.g.*, Teachman et al., *Implicit and Explicit Stigma of Mental Illness in Diagnosed and Healthy Samples*, 25 J. Soc. & Clinical Psychol. 75 (2006).

Additionally, denying pseudonymity in a case brought to vindicate civil rights—where the plaintiff alleges that the defendant institution was deliberately indifferent to her sexual assault and discriminated against her based on the very disabilities arising from that assault—would "combat the injury litigated against" by compounding the stigma and harm Yale already inflicted. The chilling effect of forced identification in this context would undermine Congress's purpose in enacting both the ADA and Title IX.

**D.     Ms. Doe Is Particularly Vulnerable to the Possible Harms of Disclosure**

**(Factor 4)**

Ms. Doe is particularly vulnerable to the harms of disclosure by every measure. She is a sexual assault survivor suffering from active, clinically documented PTSD, severe anxiety, and chronic insomnia. She has been psychiatrically hospitalized with suicidal ideation. She is an international student whose visa status was revoked, forcing her departure from the United States under threat of immigration enforcement during a period of heightened ICE activity targeting international students. (Compl. ¶¶ 126–28.)

Dr. Quan confirms that Ms. Doe's current psychological state renders her especially fragile. The intersection of her chronic sleep deprivation and autonomic arousal has compromised her emotional reserves such that the additional stressor of public identification would not merely cause distress but would trigger "catastrophic psychological decompensation." (Medical Note at 1.) This vulnerability is not speculative—it is the clinically documented product of a sexual assault, years

of inadequately treated trauma, and the very institutional failures that are the subject of this litigation.

E.   **The Suit Challenges the Actions of a Private Party, Reducing the Countervailing Interest in Openness (Factor 5)**

This action is brought against Yale University, a private institution. While the presumption of public access applies with particular force to suits challenging governmental action, that justification is diminished where, as here, the defendant is a private university. *See Sealed Plaintiff*, 537 F.3d at 190. The public's interest in scrutinizing government conduct, which underlies much of the openness presumption, is not implicated with the same force.

F.   **The Defendant Will Not Be Prejudiced by Plaintiff's Use of a Pseudonym (Factor 6)**

Yale University will suffer no prejudice from Ms. Doe's use of a pseudonym. Yale knows Ms. Doe's true identity. Ms. Doe was a student at Yale SOM and interacted with the administrators, faculty, and staff identified in the Complaint over an extended period spanning from 2023 through 2025. Yale therefore has full knowledge of the facts and circumstances alleged, including the identity of the plaintiff and all relevant witnesses. The pseudonym does not obscure any information from the defendant—it protects the plaintiff's identity only from the general public.

Moreover, any minimal procedural burden can be mitigated through a protective order requiring disclosure of Ms. Doe's identity to the Court and to opposing counsel, which Plaintiff's counsel proposes here. *See Sealed Plaintiff*, 537 F.3d at 190 (noting courts should consider whether prejudice can be mitigated).

G.   **Plaintiff's Identity Has Been Kept Confidential (Factor 7)**

Ms. Doe has taken steps to maintain the confidentiality of her identity in connection with this litigation. This motion is being filed at the outset of the case. Ms. Doe has not publicized her claims. To the extent her identity is known within the Yale SOM community, it is precisely because Yale's own processes—the Honor Committee hearing, the FRB proceeding, and the OIEA investigation—necessarily involved other individuals. Granting pseudonymity at this early stage would protect Ms. Doe before any broader public disclosure occurs.

H.   **The Public's Interest in the Litigation Is Not Furthered by Disclosure of Plaintiff's Identity (Factor 8)**

The public has a significant interest in this case—but that interest lies in whether Yale University complied with the ADA, Section 504, and Title IX in its treatment of a student with documented disabilities stemming from sexual assault. That interest is fully served by public access to the filings, the legal arguments, and the evidence of Yale's institutional conduct. It is not advanced by knowing the name of the specific student who had the misfortune of being at the receiving end of Yale's alleged systemic failures.

To the contrary, disclosure of Ms. Doe's identity would affirmatively disserve the public interest by deterring other sexual assault survivors and individuals with mental health disabilities from bringing civil rights claims against powerful institutions. The Internet age has dramatically amplified the permanence and reach of any disclosure, making the chilling effect of forced identification particularly severe. *See Doe v. Reed*, 561 U.S. 186, 208–14 (2010) (Thomas, J., dissenting) (discussing how Internet-era identification chills assertion of rights).

I.   **The Legal Nature of the Claims Reduces the Public Interest in Plaintiff's Identity (Factor 9)**

This case presents claims that are substantially legal in character: whether Yale violated the ADA and Section 504 by failing to provide reasonable accommodations and engage in the interactive process; whether Yale violated Title IX through deliberate indifference to Ms. Doe's sexual assault; and whether Yale breached its contractual obligations under its published policies. These are legal questions that can be resolved without reference to the plaintiff's name. The public's interest in the legal principles at stake—the obligations of universities to accommodate students with disabilities and to respond appropriately to sexual assault—is not furthered by publicly identifying the particular student involved.

**J.      Alternative Mechanisms Are Available but Insufficient Standing Alone (Factor 10)**

While partial redaction of sensitive medical records and protective orders can reduce some of the harm of disclosure, they cannot fully protect Ms. Doe. The Complaint itself necessarily alleges the sexual assault, the psychiatric hospitalization, the suicidal ideation, and the mental health diagnoses. No amount of redaction of supporting documents can undo the public association of Ms. Doe's name with these facts if the Complaint is publicly filed under her legal name. A pseudonym is the only mechanism that adequately protects her interests.

Plaintiff proposes that her true identity be disclosed to the Court and to Yale's counsel, subject to a protective order prohibiting further dissemination. This arrangement preserves the adversarial process and the Court's oversight while protecting Ms. Doe from the catastrophic harms her treating physician has identified.

## II. THE MEDICAL EVIDENCE ESTABLISHES EXCEPTIONAL CIRCUMSTANCES REQUIRING PSEUDONYMITY

The medical evidence here is unequivocal and unrebutted. Dr. Qi Quan, who holds both PhD and MD degrees and serves as an attending emergency physician and deputy chief physician

at the Fourth Medical Center of Chinese PLA General Hospital, has been treating Ms. Doe and overseeing her clinical care. Dr. Quan documents that Ms. Doe suffers from severe anxiety, PTSD, and chronic insomnia; that she has been under active clinical care and has consistently attended psychotherapy for the past six months; and that the intersection of chronic sleep deprivation and autonomic arousal has compromised her emotional reserves. (Medical Note at 1.)

Dr. Quan's clinical opinion, stated within a reasonable degree of psychological certainty and under penalty of perjury, is that forcing Ms. Doe to proceed publicly would "trigger a catastrophic psychological decompensation." (*Id.*) He further states that "in her current state of vulnerability, such a stressor would render her unable to pursue the current legal process and would pose a severe risk to her personal safety and survival." (*Id.*)

This medical evidence is more than sufficient to satisfy the *Sealed Plaintiff* standard. It is concrete, particularized, and grounded in ongoing clinical observation—precisely the kind of evidence courts look for when evaluating pseudonymity motions. *See Doe v. Hartford Life*, 237 F.R.D. at 548–49 (granting pseudonymity based on treating psychiatrist's assessment that public identification would potentially worsen plaintiff's condition).

The medical evidence is further corroborated by the record of this case itself: Ms. Doe was psychiatrically hospitalized at Yale New Haven Psychiatric Hospital following the FRB proceeding, with her attending psychiatrist, Dr. Sean Patterson, documenting her PTSD, depression, and suicidal ideation. (Compl. ¶¶ 103–04.) The trajectory from sexual assault, to inadequately addressed PTSD, to institutional retraumatization, to psychiatric hospitalization, to the current litigation underscores the severity of Ms. Doe's vulnerability and the grave risks posed by public identification.

**III.**

## DENIAL OF PSEUDONYMITY WOULD EFFECTIVELY DENY MS. DOE ACCESS TO THE COURTS

Dr. Quan's opinion is not merely that public proceedings would harm Ms. Doe—it is that public proceedings would "render her unable to pursue the current legal process." (Medical Note at 1.) Denial of pseudonymity would therefore force Ms. Doe to choose between vindicating her civil rights under the ADA, Section 504, and Title IX, on the one hand, and protecting her mental health and personal safety on the other. This is precisely the impossible choice that the *Sealed Plaintiff* framework exists to prevent.

The remedial purpose of the ADA, Section 504, and Title IX would be fundamentally undermined if a sexual assault survivor suffering from PTSD and related disabilities—disabilities that arose from the very assault she reported to the defendant institution—were unable to seek redress because the act of doing so publicly would trigger a psychiatric crisis. Such a result would perversely reward the institutional failures that this litigation seeks to address.

This Circuit has a long history of permitting pseudonymous litigation to vindicate disability and civil rights. *See T.W. v. New York State Board of Law Examiners*, 996 F.3d 87 (2d Cir. 2021) (plaintiff with anxiety and cognitive disorders litigated under initials in ADA case); *Doe v. New York University*, 442 F. Supp. 522 (S.D.N.Y. 1978) (permitting pseudonymity for student with mental health conditions in action against university). Denying pseudonymity here would create a chilling effect on the very population Congress sought to protect.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant her motion to proceed under the pseudonym "Jane Doe" and enter a protective order permitting disclosure of her true identity to the Court and to Defendant's counsel only.

Respectfully Submitted,

**PLAINTIFF JANE DOE**

By: \_\_\_/s/_____
Alexander T. Taubes, Esq.
Federal Bar No.: ct30100
Law Offices of Alexander T. Taubes, PLLC
470 James Street, Suite 007
New Haven, CT 06513
Tel. 203-909-0048
Email: alextt@gmail.com